**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Ch. 11 |
| | ) | |
| Nu Ride Inc., et al., | ) | |
| | ) | Case No. 23-10831 (MFW) |
| Reorganized Debtors. | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| Lordstown Motors Corp. and | ) | |
| Lordstown EV Corporation, | ) | Adv. No. 23-50414 (MFW) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Hon Hai Precision Industry | ) | Related Docs: 31, 32, 53, |
| Co., Ltd (a/k/a Hon Hai | ) | 56, 58, 62, 63 |
| Co., Ltd (a/k/a Hon Hai | ) | |
| Technology Group), | ) | |
| Foxconn EV Technology, Inc., | ) | |
| Foxconn Ventures Pte. Ltd., | ) | |
| Foxconn (Far East) Limited, | ) | |
| and Foxconn EV System LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION[1]**

Before the Court is the Motion of the Defendants[2] to Stay

this adversary proceeding pending resolution of the Defendants'

Appeal of the Court's Order and accompanying Opinion dated August

1, 2024, granting in part and denying in part the Defendants'

---

[1]    This Opinion constitutes the findings of fact and
conclusions of law of the Court pursuant to Rule 7052 of the
Federal Rules of Bankruptcy Procedure.

[2]    The Defendants are Hon Hai Precision Industry Co., Ltd.
(a/k/a Hon Hai Technology Group) ("Hon Hai"), Foxconn (Far East)
Limited ("Far East"), Foxconn EV Technology, Inc. ("Foxconn
Tech"), Foxconn Ventures Pte. Ltd. ("FVP"), and Foxconn EV System
LLC ("Foxconn System").

Motion to Dismiss this proceeding.[3]  The Defendants argue that there is a mandatory stay of the appeal under applicable Supreme Court authority because its claims were subject to an arbitration clause.  The Plaintiffs[4] oppose the Motion, contending that the authority on which the Defendants rely does not apply to bankruptcy cases, and that even if it does, it does not apply here because the appeal is frivolous.

I.    FACTUAL AND PROCEDURAL BACKGROUND

On June 27, 2023, LMC and its affiliates (the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code.  On the same day, the Plaintiffs commenced the instant adversary proceeding against the Defendants.

The Debtors sold substantially all of their physical assets during the bankruptcy case,[5] and the Court confirmed the Debtors' plan of reorganization which vested certain of the Debtors' causes of action (including this adversary proceeding) in the

---

[3]    Adv. D.I. 31 & 32.  References to the docket in the main bankruptcy case are to "D.I. #," while references to the docket in the adversary proceeding are to "Adv. D.I. #."  That order and accompanying opinion were amended by the Court on October 1, 2024.  Adv. D.I. 62, 63.  The Opinion and Amended Opinion are collectively referred to herein as the "Opinion."

[4]    The Plaintiffs are Lordstown Motor Corporation ("LMC") and Lordstown EV Corporation.

[5]    D.I. 586.

Reorganized Debtors.[6]

The Plaintiffs' Complaint alleges that the Defendants induced the Plaintiffs to enter into a series of agreements, promising support through investment and expertise, while intending to acquire the Plaintiffs' most valuable asset, their manufacturing plant, for themselves without fulfilling those promises.  The Complaint contains eleven counts: seven for breach of contract, two for fraud, one for tortious interference with contract, and one seeking equitable subordination of the Defendants' claims and equity interests pursuant to section 510(c) of the Bankruptcy Code.

On September 29, 2023, the Defendants filed a Motion to Dismiss the Complaint in favor of arbitration, or in the alternative, for failure to state a claim.  The Motion was opposed by the Plaintiffs and the Equity Committee.

After briefing, the Court entered an Order and Opinion on August 1, 2024, granting in part and denying in part the Defendants' Motion to Dismiss.  The Court dismissed Counts Six and Nine because they are subject to valid arbitration provisions but denied the Motion as to the other counts, concluding that they were not the subject of any arbitration agreement.

On August 12, 2024, the Defendants appealed the portion of the Opinion and Order denying their Motion to Dismiss the

---

[6]    D.I. 1069 at p. 10 of 57; D.I. 1069-1 Art. V, Part J.

Plaintiffs' other claims in favor of arbitration.[7]  On August 29, 2024, the Defendants filed a Motion to Stay the adversary proceeding pending appeal.[8]  The matter has been fully briefed[9] and is ripe for decision.

II.  <u>JURISDICTION</u>

In its Opinion, the Court concluded that it had jurisdiction over the adversary proceeding.[10]  It further concluded that, although the Defendants do not consent to the entry of a final order on the merits of the Plaintiffs' claims, the Court had authority to enter orders on preliminary matters to the extent they do not constitute a final adjudication of a matter over which the Court does not have constitutional authority to enter a final order.[11]  The Court concluded that that includes the

---

[7]    Adv. D.I. 33.

[8]    Adv. D.I. 52.

[9]    <u>See</u> Adv. D.I. 56 & 58.

[10]    Adv. D.I. 31 at 6-8.

[11]    <u>Id.</u> at 7.  <u>See</u> <u>O'Toole v. McTaggart (In re Trinsum Grp., Inc.)</u>, 467 B.R. 734, 738 (Bankr. S.D.N.Y. 2012) (holding that "both before and after <u>Stern v. Marshall</u>, it is clear that the bankruptcy court may handle all pretrial proceedings, including the entry of an interlocutory order dismissing fewer than all of the claims in an adversary complaint.") (citations omitted).  <u>See also</u> <u>Am. Media Inc. v. Anderson Mgmt. Servs. (In re Anderson News, LLC)</u>, Civ. No. 15-mc-199-LPS, 2015 WL 4966236, at *1-2 (D. Del. Aug. 19, 2015) (holding that bankruptcy court's authority to enter final orders on non-core claims was not implicated where the court entered an order denying summary judgment because that order was not a final order); <u>Boyd v. King Par, LLC</u>, No.

authority of the Court to determine whether a matter is core or non-core, whether a matter is governed by an enforceable arbitration clause, and whether a complaint states a plausible claim on which relief can be granted.[12]

III. <u>DISCUSSION</u>

A.   <u>Standard of Review</u>

The Defendants assert that they are entitled to an automatic stay of this adversary proceeding pending appeal of the issue of its arbitrability, based on the Supreme Court's <u>Coinbase</u> decision.[13]  The Plaintiffs dispute that contention and assert that the adversary proceeding is not automatically stayed by the

---

1:11-CV-1106, 2011 WL 5509873, at *2 (W.D. Mich. Nov. 10, 2011) ("[E]ven if there is uncertainty regarding the bankruptcy court's ability to enter a final judgment . . . that does not deprive the bankruptcy court of the power to entertain all pre-trial proceedings, including summary judgment motions.").

[12]   Adv. D.I. 31 at 8.  <u>See</u> 28 U.S.C. § 157(b)(3) ("The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11."); <u>FBI Wind Down, Inc. v. Heritage Home Grp., LLC (In re FBI Wind Down, Inc.)</u>, 252 F. Supp. 3d 405, 414-15 (D. Del. 2017), aff'd 741 Fed. Appx. 104 (3d Cir. 2018) (holding that bankruptcy court properly determined scope of arbitration agreement and denied motion to compel arbitration); <u>Trinsum Grp.</u>, 467 B.R. at 738 (holding that bankruptcy court may enter interlocutory order dismissing fewer than all of the claims in an adversary complaint).

[13]   <u>Coinbase, Inc. v. Bielski</u>, 599 U.S. 736 (2023) (holding that a district court order denying arbitration was automatically stayed pending appeal because the essence of the appeal was whether the district court even had authority to decide the case).

filing of the notice of appeal.[14]  Therefore, the Court must
decide whether the Coinbase case applies to the circumstances of
this proceeding.

> B.    The Parties' Arguments

The Defendants argue that the Supreme Court's decision in
Coinbase mandates an automatic stay of this adversary proceeding
because the Defendants filed an appeal from the Court's denial of
a motion seeking to enforce its right to arbitrate.

In Coinbase, the Supreme Court held that a district court
must stay its proceedings pending an interlocutory appeal of the
arbitrability of the case.[15]  The Court reasoned that because the
question on appeal is whether the case belongs in arbitration or
in the District Court, the "entire case is essentially 'involved
in the appeal.'"[16]  It concluded that if the district court
proceedings are not stayed under these circumstances, the

---

[14]    See, e.g., In re Thomason, 642 B.R. 8, 12–13 (Bankr. D.
Idaho 2022) ("The filing of an appeal [to the district court]
does not bring the bankruptcy case to a halt." (citing §
158(d)(2)(D) & Fed. R. Bankr. P. 8007)); Goldberg v. Bosshardt
(In re SOL, LLC), Bankr. No. 09-12684, Adv. No. 09-2351, 2011 WL
2652155, at *3 (Bankr. S.D. Fla. July 5, 2011) ("[A]n appeal to
the district court does not stay the remaining bankruptcy court
proceedings unless the district court or bankruptcy court issues
a stay pending appeal." (citing § 158(d)(2)(D))).  See also In re
Safari, Case No. 23-10101, 2024 WL 3929004, at *3 & n.28 (Bankr.
D. Vt. Aug. 23, 2024) (same); In re Wellington, 631 B.R. 833, 837
(Bankr. M.D.N.C. 2021) (same); In re Simpson, Case No. 17-10442,
2018 WL 1940378, at *3 (Bankr. D. Vt. Apr. 23, 2018) (same).

[15]    Coinbase, 599 U.S. at 738.

[16]    Id. at 741 (quoting Griggs v. Provident Consumer Discount
Co., 459 U.S. 56, 58 (1982) (per curiam)).

benefits of arbitration would be lost.[17]  The Court in <u>Coinbase</u>
relied on its prior <u>Griggs</u>[18] decision in which it had held that
appeals in general divest the district court of its ability to
decide any aspect of the case which is involved in the appeal.

The Defendant argues that <u>Coinbase</u> mandates that this
adversary proceeding be automatically stayed pending its appeal
of the issue of which forum (arbitration or the Bankruptcy Court)
should decide the merits of the remaining Counts of the
Complaint.  Otherwise, the Defendants contend, "many of the
asserted benefits of arbitration (efficiency, less expense, less
intrusive discovery, and the like) would be irretrievably lost"
by them.[19]

The Plaintiffs disagree on several grounds.

1.    <u>Does Coinbase Create an Exception for Bankruptcy
      Cases?</u>

a.    <u>Footnote 6</u>

The Plaintiffs first argue that the Supreme Court in
<u>Coinbase</u> acknowledged that bankruptcy appeals are exceptions to
its holding that appeals of arbitration issues are automatically
stayed.  The Plaintiffs note that the Court acknowledged that
there are statutory exceptions to its holding where Congress
expressly stated that certain matters are <u>not</u> stayed pending an

---

[17]    <u>Id.</u> at 743.

[18]    <u>Griggs</u>, 459 U.S. at 58.

[19]    <u>Coinbase</u>, 599 U.S. at 743.

7

appeal of an order denying arbitration.  They note that the list
of statutory exceptions includes the only reference in the
Coinbase case to bankruptcy appeals.[20]  Therefore, the Plaintiffs
contend that bankruptcy appeals are not stayed as a result of the
Coinbase decision.[21]

The Defendants respond that footnote 6 of Coinbase does not
create an exception for all appeals of bankruptcy court orders as
the Plaintiffs suggest.  Instead, they note that that footnote
refers only to section 158(d)(2)(D) which applies narrowly to
certified direct appeals from bankruptcy courts to the courts of
appeals.[22]  The Defendants cite authority[23] holding that

---

[20]    Id. at 744, n.6.  The list of exceptions includes section
158(d)(2)(D) of title 28 which provides:
>       An appeal taken under this paragraph does not stay any
>       proceeding of the bankruptcy court, the district court,
>       or the bankruptcy appellate panel from which the appeal
>       is taken, unless the respective bankruptcy court,
>       district court, or bankruptcy appellate panel, or the
>       court of appeals in which the appeal is pending, issues
>       a stay of such proceeding pending the appeal.
28 U.S.C. § 158(d)(2)(D).

[21]    See also Whose Dog R U Productions, Inc. v.  Wolkowitz
(In re Orchid Child Prods., LLC), Case No. 2:20-bk-21080-RK, Adv.
No. 2:21-ap-01212-RK, 2024 WL 1740741, at *20 (Bankr. C.D. Cal.
Apr. 22, 2024) (holding that the express reference to section
158(d)(2)(D) in footnote 6 of Coinbase signaled "clear
congressional intent" that there would be no automatic stay
pending appeal of a bankruptcy court order).

[22]    See 28 U.S.C. § 158(d)(2) (establishing procedure for
direct appeals from bankruptcy courts to the courts of appeals).

[23]    The Defendants cite to bare orders as authority.  Because
such orders do not provide a fulsome discussion of the parties'
arguments or the court's analysis, the Court cautions counsel
against citing them as authority.

bankruptcy cases and adversary proceedings are not excepted from the <u>Coinbase</u> holding.[24]

The Court agrees with the Defendants that footnote 6 of <u>Coinbase</u> cannot be read to create an exception for all bankruptcy appeals.  That footnote does not reference bankruptcy appeals generally; it cites as a statutory exception <u>only</u> subsection 158(d)(2)(D), which is limited to direct appeals from the bankruptcy court to the court of appeal.  The instant case does not involve such an appeal.  Therefore, the Court concludes that footnote 6 of <u>Coinbase</u> does not indicate an intention by the Supreme Court to exclude all bankruptcy appeals from its holding that an appeal of denial of arbitration creates an automatic stay of the proceeding pending appeal.

            b.    <u>Text</u>

The Plaintiffs also argue that the text of <u>Coinbase</u> itself makes it clear that its ruling is not applicable to appeals of bankruptcy court orders.  They note that the Supreme Court in

---

[24]    <u>See, e.g.</u>, <u>Google, LLC v. Angell</u>, No. 5:24-CV-309-D 2024 U.S. Dist. LEXIS 109349, at *1 (E.D.N.C. June 20, 2024) (holding that <u>Coinbase</u> applies to a contested matter in a bankruptcy case); <u>Big Picture Loans, LLC v. Eventide Credit Acquisitions, LLC</u>, No. 24-00103, Dkt. No. 26, slip op. (N.D. Tex. May 14, 2024) (concluding that, in the absence of a decision of the Fifth Circuit or Supreme Court excepting bankruptcy cases from the <u>Coinbase</u> holding, it applied to bankruptcy appeals), <u>clarified by</u> 2024 WL 3239935, at *4 (N.D. Tex. June 27, 2024) (holding that the <u>Coinbase</u> stay applied only to the adversary proceeding and did not stay any of the matters in the bankruptcy case).

Coinbase explicitly refers only to "district courts" and makes no reference to bankruptcy courts or to lower courts generally.[25]

The Defendants argue that the principles on which the Coinbase Court made its ruling apply to all lower courts, not exclusively to district courts.  Those policies include assuring that the benefits of arbitration are not irretrievably lost if the party seeking arbitration appeals the denial of its arbitration request and is forced to litigate while its appeal is pending.  The Defendants note that the Third Circuit in Mintze recognized the "strong policy in favor of arbitration [that] requires rigorous enforcement of arbitration agreements" and held that those same policies apply in bankruptcy cases (and their adversary proceedings).[26]  For this reason, the Defendants assert that parties in bankruptcy cases should have the same substantive rights as parties in district court cases, namely the right Coinbase provides to an automatic stay pending appeal of orders denying arbitration.[27]

---

[25]    Coinbase, 599 U.S. 736.

[26]    Mintze v. Am. Gen. Fin. Servs, Inc. (In re Mintze), 434 F.3d 222, 229 (3d Cir. 2006).

[27]    See, e.g., MF Glob. Holdings Ltd. v. Allied World Assurance Co., Ltd. (In re MF Glob. Holdings Ltd.), 296 F. Supp. 3d 662, 665, 667 (S.D.N.Y. 2017) (stating that just because bankruptcy cases are heard on referral from the district courts "should not rob the referred parties of substantive rights of review by Article III courts to which they would otherwise be entitled" but holding that stay did not apply because the order was not appealable).

The Court agrees with the Defendants that the Supreme Court's reference to "district court" in Coinbase was not meant to exclude bankruptcy courts from the effect of its ruling. First, bankruptcy courts are units of the district courts and bankruptcy judges are officers of the district courts.[28]  The cases that bankruptcy courts hear are only those referred to them by the district courts, although most district courts automatically refer all bankruptcy cases (and their related matters) to the bankruptcy courts.[29]  Therefore, a reference to district courts in <u>Coinbase</u> can logically be interpreted to include the bankruptcy courts.

Second, it would have made no sense for the Court in <u>Coinbase</u> to refer to section 158(d)(2)(D) in footnote 6, which deals with appeals of <u>some</u> bankruptcy court orders, as an exception to its holding if its holding did <u>not</u> apply to bankruptcy appeals in the first place.

Therefore, the Court concludes that the reference in the

---

[28]  <u>See</u> 28 U.S.C. § 151 ("In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district.  Each bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding . . . .").

[29]  <u>Id.</u> at § 157(a).  <u>See, e.g.</u>, General Orders, Amended Standing Order of Reference, U.S. Bankruptcy Court for the District of Delaware, Feb. 29, 2012, https://www.deb.uscourts.gov/sites/deb/files/generalorders/Standing_Order20120229_0.pdf.

Coinbase decision to "district courts" does not suggest that it is not applicable to bankruptcy courts.

> c.   Did Coinbase overrule existing precedent governing bankruptcy court appeals?

The Plaintiffs argue further that the Supreme Court in Coinbase did not expressly or impliedly overrule existing precedent which holds that appeals of bankruptcy orders are not automatically stayed.  They note that the Coinbase Court relied on the Griggs principle, which provides that "[a]n appeal, including an interlocutory appeal, 'divests the district court of its control over those aspects of the case involved in the appeal.'"[30]  The Plaintiffs argue, however, that the Court in Coinbase acknowledged that Griggs only applies "absent contrary indications."[31]

The Plaintiffs contend that contrary indications are present here because bankruptcy law has long had a different, more flexible, policy regarding the effect an appeal of one matter in a bankruptcy case has on the ability of the bankruptcy court to hear other matters in the case.  The Plaintiffs argue that both the Supreme Court and the Third Circuit have acknowledged the unique nature of bankruptcy cases[32] which the Plaintiffs contend

---

[30]   Coinbase, 599 U.S. at 740 (quoting Griggs, 459 U.S. at 58).

[31]   Id.

[32]   Bullard v. Blue Hills Bank, 575 U.S. 496, 501 (2015) ("The rules are different in bankruptcy [from ordinary civil litigation].  A bankruptcy case involves 'an aggregation of

mandates a different practice for bankruptcy appeals.  That
uniqueness has resulted in different rules on when a bankruptcy
order is final.[33]  Even where a bankruptcy court order is final
and, therefore, appealable, bankruptcy precedent and practice
provides that an appeal of a bankruptcy court order does not stay
the bankruptcy court from considering and deciding unrelated
matters.[34]

The Plaintiffs assert that, given the longstanding

---

individual controversies,' many of which would exist as stand-
alone lawsuits but for the bankrupt status of the debtor."); In
re Energy Future Holdings Corp., 904 F.3d 298, 308 (3d Cir. 2018)
(noting that finality and appealability are treated differently
in the bankruptcy context compared to ordinary civil litigation).
Cf. 1 Collier on Bankruptcy ¶5.08[1][b] ("The problems of
applying the final judgment rule to bankruptcy litigation with
its numerous parties in interest and its adversary proceedings
and contested matters makes '[t]he question of finality in
bankruptcy appeals a thorny one,' although most courts agree that
the concept of finality in bankruptcy is broader and more
flexible than in ordinary civil litigation, and that
determinations of finality in the context of bankruptcy are dealt
with 'in a more pragmatic and less technical sense than in other
settings.'").

[33]   Bullard, 575 U.S. at 503 (holding that the denial of
confirmation of a chapter 13 plan with leave to amend the plan is
not a final appealable order); Energy Future Holdings, 904 F.3d
at 309 (holding that order approving merger agreement was not
final order approving fees due under that agreement because the
allocation of the fees among the debtors' estates was not
resolved and any payment of the fees required further court
order).

[34]   In re Wash. Mut., Inc., 461 B.R. 200, 218-19 (Bankr. D. Del.
2011) ("[I]n the bankruptcy context the appeal of one ruling does
not mean that the entire bankruptcy case is stayed."), vacated in
part on other grounds, 2012 WL 1563880 (Bankr. D. Del. Feb. 24,
2012).  See also 28 U.S.C. § 158(d)(2)(D); Fed. R. Bankr. P.
8007(a)(1), (e).

difference in bankruptcy practice, the Coinbase ruling does not overrule the flexible divestiture rule for bankruptcy cases especially in the absence of an express statement of that intent. In fact, the Plaintiffs contend that Coinbase took care not to overrule the longstanding difference in practice by making reference to section 158(d)(2)(D) as an exception and by noting that the Griggs principle applies only absent contrary indications.

The Plaintiffs note that at least one court has held that Coinbase did not change existing practice whereby an appeal of a bankruptcy court order does not automatically stay the bankruptcy court from considering and deciding unrelated matters.[35]  They also cite numerous academics and other authorities who argue that extending Coinbase as the Defendants seek could cause disruptive — and clearly unintended — delays in bankruptcy cases "where time is often of the essence."[36]

---

[35]    See Orchid Child, 2024 WL 1740741, at *20.

[36]    See e.g., Laura N. Coordes, A Clash of Automatic Stays: Analyzing Coinbase v. Bielski's Impact on Bankruptcy Proceedings, 43 No. 8 Bankr. L. Letter NL 1 (Aug. 2023) (arguing Coinbase "should not apply in bankruptcy proceedings" because "bankruptcy is different from other types of federal litigation," and "no one at the [Supreme] Court was thinking about bankruptcy cases when they decided Coinbase."); Lawrence R. Ahern, III & Nancy Fraas MacLean, Bankr. Proc. Manual § 9019:5 (2024) ("If the rule in Coinbase does apply broadly in bankruptcy, a bankruptcy court could find itself unable to address issues involving a creditor that made an unsuccessful arbitration demand."); Kathleen P. March & Janet A. Shapiro, Cal. Prac. Guide Bankr. § 1:328.11 (2023) (observing that applying Coinbase to bankruptcy appeals "could delay or disrupt the course of a bankruptcy case").

The Defendants respond that, even if there is a distinct, flexible divestiture rule applicable to bankruptcy cases, it is not applicable to the instant adversary proceeding which is no different from an ordinary civil lawsuit.[37]  They note that the Third Circuit in <u>Mintze</u> held that arbitration provisions are enforceable in adversary proceedings.[38]  Further, they argue that, because the Debtors in this case have been reorganized and their Plan has been confirmed and gone effective, the justification for a different appellate procedure for bankruptcy cases (that a stay pending appeal will have an adverse effect on the administration of the bankruptcy case) is not present in this case.

The Plaintiffs argue that the basis for the different divestiture rule applies equally to main bankruptcy cases and to adversary proceedings.[39]  They contend that adversary proceedings are not independent civil litigation but are part of the broader bankruptcy case.[40]  They note that neither <u>Coinbase</u>, the Federal

---

[37]  <u>See, e.g.,</u> <u>In re Mansaray-Ruffin</u>, 530 F.3d 230, 234 (3d Cir. 2008) (noting that an adversary proceeding is "essentially a self-contained trial" with "all the trappings of traditional civil litigation.").

[38]  <u>Mintze</u>, 434 F.3d at 233.

[39]  The Plaintiffs note that section 158(d)(2)(D) of title 28 is applicable to both adversaries and bankruptcy cases.

[40]  <u>See</u> <u>Prosser v. Gerber (In re Prosser)</u>, 777 F.3d 154, 162 (3d Cir. 2015) ("[T]he adversary proceeding was only a part of the bankruptcy case . . . ."); <u>Mansaray-Ruffin</u>, 530 F.3d at 234 ("An adversary proceeding is essentially a self-contained trial —

Arbitration Act ("FAA"), nor any authority cited by the Defendants justifies a departure from bankruptcy practice.[41] They specifically note that the Court in Mintze only held that arbitration provisions are enforceable in bankruptcy cases and their related adversary proceedings, but did not hold that the bankruptcy procedures on appeal (namely that an order denying arbitration is not automatically stayed) are superseded by FAA procedures.

The Court agrees with the Plaintiffs that bankruptcy practice and procedure is generally different from civil litigation in district courts.  In the latter, there are a limited number of parties, all of whom are directly affected by the appeal.  Bankruptcy cases are different: they involve numerous (sometimes thousands) of different parties and many issues that may affect directly or indirectly some or all of those parties.  This difference requires different appellate practices and procedures.  It has resulted in numerous cases

---

still within the original bankruptcy case — in which a panoply of additional procedures apply.") (emphasis added); Cohen v. Bucci, 905 F.2d 1111, 1112 (7th Cir. 1990) ("Adversary proceedings in bankruptcy are not distinct pieces of litigation; they are components of a single bankruptcy case . . . ."); SIPC v. Murphy (In re Selheimer & Co.), 319 B.R. 395, 405 (Bankr. E.D. Pa. 2005) (same).

[41]   MF Glob. Holdings, 296 F. Supp. 3d at 664-65 (noting that "[n]either the [FAA's] text nor its legislative history suggests that Congress had in mind appeals from bankruptcy courts to district courts when it drafted Section 16(b)," and "the statutory scheme governing bankruptcy suggests just the opposite").

holding that the appeal of an order of the bankruptcy court does not divest the court of jurisdiction or stay the court's ability to address all other unrelated matters in the bankruptcy case.[42] As courts have noted, a bankruptcy case typically raises a myriad of issues, many totally unrelated and unconnected with the issues involved in any given appeal.  The application of a broad rule that a bankruptcy court may not consider any request filed while an appeal of one order is pending has the potential to severely hamper a bankruptcy court's ability to administer the bankruptcy case in a timely manner.[43]  As a result, some bankruptcy courts have determined that they do retain jurisdiction over matters presented subsequent to an appeal where the appeal concerns

---

[42]    See, e.g., In re NNN 400 Cap. Center 16 LLC, Civ. No. 21-816, 2022 WL 872643, at *7 (D. Del. March 24, 2022) (affirming bankruptcy court's ruling that the appeal of its order did not stay the bankruptcy court from hearing a motion to enforce that order); Wash. Mut., 461 B.R. at 218-19 (holding that an appeal of one order did not preclude the bankruptcy court from considering and ruling on other matters in the case).  See also 28 U.S.C. § 158(d)(2)(D); Fed. R. Bankr. P. 8007(a)(1), (e).

[43]    See, e.g., Carr v. New Century TRS Holdings, Inc. (In re New Century TRS Holdings, Inc.), Bankr. No. 07-10416, Adv. No. 09-52251, 2012 WL 2064500, at *2 (Bankr. D. Del. June 7, 2012) ("As courts have noted, however, a bankruptcy case typically raises a myriad of issues, many totally unrelated and unconnected with the issues involved in any given appeal.  The application of a broad rule that a bankruptcy court may not consider any request filed while an appeal is pending has the potential to severely hamper a bankruptcy court's ability to administer its cases in a timely manner.") (quoting In re Whispering Pines Ests., 369 B.R. 752, 758 (1st Cir. BAP 2007)).

unrelated aspects of the case.[44]

It has also resulted in different procedures for obtaining a stay pending appeal.  Rather than an appeal automatically staying all proceedings in the lower court, in bankruptcy cases a party must request, and the court must grant, a stay pending appeal.[45]

However, the Court agrees with the Defendant that the policy behind these different practices and procedures in bankruptcy cases is not applicable to the instant adversary proceeding. First, there are not thousands of parties to this action, there

---

[44]    See, e.g., Wash. Mut., Inc., 461 B.R. at 220 (concluding that appeal of ruling on ownership of assets dealt with in plan did not divest bankruptcy court of jurisdiction to consider confirmation of plan even though confirmation might moot the appeal, because the bankruptcy court was not being asked to modify its order and no stay pending appeal had been obtained); In re VII Holdings Co., 362 B.R. 663, 666 n. 3 (Bankr. D. Del. 2007) (holding that court retained jurisdiction to decide entitlement to fees and costs, notwithstanding appeal of order dismissing the involuntary petition, because "absent a stay pending appeal, [the lower court] may retain jurisdiction 'to decide issues and proceedings different from and collateral to those involved in the appeal. . . .' [and] may also 'enforce the order or judgment appealed.'") (citations omitted). But see Whispering Pines Ests., 369 B.R. 752, 758-59 (1st Cir. BAP 2007 (determining that despite unique bankruptcy divestiture rules, bankruptcy court did not have jurisdiction to consider motion for relief from stay or to appoint a chapter 11 trustee because those issues were too intimately related to the order confirming the debtor's plan which was on appeal) (citations omitted).

[45]    See Fed. R. Bankr. P. 8007 (a)(1)(D) ("a party must move first in the bankruptcy court for . . . the suspension or continuation of proceedings" pending appeal) & (e) (providing that "the bankruptcy court may: (1) suspend or order the continuation of other proceedings in the case; or (2) issue any other appropriate orders during the pendency of an appeal to protect the rights of all parties in interest.") (emphasis added).

are essentially only two parties (and their respective related entities) involved in this adversary proceeding.  Second, the different practices and procedures in bankruptcy cases are founded on the concept that automatically staying a bankruptcy case upon the appeal of a specific issue would prevent the bankruptcy court from addressing the numerous other issues in the case and could adversely affect thousands of other creditors.  In this case, there are no significant other issues that depend on the outcome of this adversary proceeding.  The Debtors' Plan has been confirmed and there are few administrative matters pending. Further, the Defendants assert that their appeal only automatically stays the adversary proceeding, not the entire bankruptcy case.  In these respects, the Court agrees with the Defendants' argument that this adversary proceeding is more akin to a civil action in district court than to a typical bankruptcy matter.

Further, the Third Circuit has held in <u>Mintze</u> that there is no evidence in the statutory text or legislative history of the Bankruptcy Code to conclude that it was intended to waive the applicability of the FAA.[46]  The Third Circuit held that arbitration provisions are, therefore, applicable to core and non-core issues alike in bankruptcy cases and their adversary

---

[46]  <u>Mintze</u>, 434 F.3d at 231-32 (holding that the FAA mandate to enforce arbitration provisions applied in bankruptcy cases and bankruptcy adversaries, whether the issue was core or non-core).

proceedings.  Although the Court in Mintze did not expressly hold
that an appeal denying enforcement of an arbitration provision
automatically stayed the underlying adversary proceeding, it
effectively did so by remanding the case to the bankruptcy court
with instructions to vacate its intervening order granting
partial summary judgment and to compel arbitration by the
parties.[47]

### 2.    Is the Defendants' appeal frivolous?

The Plaintiffs argue nonetheless that the adversary
proceeding is not stayed by the Defendants' appeal because, even
if Coinbase does apply, the Supreme Court acknowledged in that
case that frivolous appeals should not be stayed.[48]  The
Plaintiffs note that the Third Circuit has also held that the
policies underlying the FAA which mandate a stay pending appeal
do not apply to frivolous appeals.[49]

The Plaintiffs contend that the Defendants' appeal in the
instant case is frivolous because (1) the Plaintiffs were not

---

[47]    Id. at 233.

[48]    Coinbase, 599 U.S. at 745 (noting that "the courts of
appeals possess robust tools to prevent unwarranted delay and
deter frivolous interlocutory appeals" and "nearly every circuit
has developed a process by which a district court itself may
certify that an interlocutory appeal is frivolous.").

[49]    Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 214 (3d
Cir. 2007) (acknowledging that the policies underlying the FAA do
not apply to frivolous appeals, and concluding that, though the
appellant had clearly alleged a prima facie case of entitlement
to arbitration, the appellant had waived that entitlement by
litigating the claims in court for four years).

parties to the arbitration clauses on which the Defendants rely, and (2) the remaining claims are based on contracts that have no arbitration clauses.[50]

The Defendants argue that this appeal is not frivolous and that their arguments with respect to arbitrability warrant appellate review.  The Defendants maintain that, contrary to this Court's conclusion, the remaining claims are not beyond the scope of the arbitration agreements.  Rather, they assert that the JVA and the CMA contain arbitration clauses – which this Court held are valid and enforceable – that cover all claims related to those agreements.  They have asserted that the remaining claims under the other contracts (namely the APA and the Investment Agreement) are related to the JVA and CMA as all of the contracts were integral to the parties' business relationship.  Thus, the Defendants argue that the Court's finding that the remaining claims are not within the scope of the arbitration provisions (even though they "relate to" the JVA/CMA) is clearly erroneous.

In support, the Defendants cite cases in which bankruptcy court orders denying arbitration or stays pending appeal have been reversed where the lower courts read broad arbitration

---

[50]    See, e.g., In re Magna Entm't Corp., No. 09-10720(MFW), 2012 WL 272847, at *2-3 (Bankr. D. Del. Jan. 30, 2012) (holding that automatic stay under the FAA was not applicable to claim objection pending before the court because debtors were not a party to the arbitration agreement).

clauses in an unduly narrow way[51] or where it was unclear whether all or only some of the claims were arbitrable.[52]  Consequently, the Defendants argue that their appeal is meritorious notwithstanding the Court's disagreement over the scope of the arbitration clauses.

The Court agrees with the Defendants that their argument is not frivolous, even though the Court disagreed with that argument in deciding the Motion to Dismiss.  Although only two of the parties' agreements contain arbitration provisions and although not all the agreements are between the same parties, the Court concludes that there is a facially valid argument that the agreements and parties are so inter-related that an appellate court could conclude that all claims under those agreements should be arbitrated.[53]  Therefore, the Court concludes that the

---

[51]    Celsius Mining LLC v. Mawson Infrastructure Grp. Inc. (In re Celsius Network LLC), 24 Civ. 2063, 2024 WL 1719633, at *6 (S.D.N.Y. Apr. 22, 2024) (reversing bankruptcy court because it effectively rewrote the arbitration clause which stated that the parties agreed to arbitrate "any dispute of any nature between the parties relating in any way to this agreement" in concluding that it did not apply to all claims in the adversary proceeding).

[52]    Equities First Holdings, Inc. v. Celsius Network Ltd.(In re Celsius Network LLC), No. 23-cv-10036, Dkt. No. 18, slip op. at 2, 4 (S.D.N.Y. Nov. 20, 2023) (granting motion to stay order requiring defendants to file an answer to the complaint while their motion for arbitration was pending because the bankruptcy court had acknowledged that some of the claims were subject to arbitration).

[53]    In fact, the Plaintiffs themselves have alleged in their complaint that the agreements and parties are interrelated.  Adv. D.I. 1 at ¶¶ 22-23, 26, 28-31, 33, 43-44.

Defendants' argument is not frivolous and that the <u>Coinbase</u> mandate of a stay pending appeal is applicable.

The Court does not suggest by its ruling in this case, however, that the holding in <u>Coinbase</u> is applicable to all adversary proceedings in bankruptcy cases.  Rather, the Court concludes only that <u>Coinbase</u> is applicable on the unique facts of this case where (1) the adversary proceeding deals with discrete issues between a few parties; (2) the stay of the adversary will not affect the ability of the Court to address unrelated issues in the bankruptcy case; (3) the plan has been confirmed and there are few other matters pending; and (4) the order on appeal was a denial of the asserted right to arbitrate all of the issues present in the adversary proceeding.[54]

Accordingly, the Court concludes that all further matters in this adversary proceeding are automatically stayed under the authority of <u>Coinbase</u> pending a ruling on the appeal.  In light of this ruling, the Court need not address the Plaintiffs' argument that the Defendants have not met the standards required

---

[54]    Given the narrow ruling in this case, the Court recommends that parties should not assume that <u>Coinbase</u> applies to all bankruptcy court orders denying arbitration and instead should file a motion for a specific ruling that it does apply and to what extent.  <u>Cf.</u> <u>Big Picture Loans</u>, 2024 WL 3239935, at *4 (clarifying its prior holding that the <u>Coinbase</u> stay applied only to the adversary proceeding and did not stay any of the matters in the bankruptcy case).

by bankruptcy caselaw and procedure for a stay pending appeal.[55] Nor does the Court need to address the Plaintiffs' argument that the Defendant is not entitled to an extension of the time to answer the complaint.[56]

IV.  <u>CONCLUSION</u>

For the forgoing reasons, the Court will stay this entire adversary proceeding, pending final resolution of the Defendants' appeal of this Court's order denying their Motion to Dismiss the adversary in favor of arbitration.

---

[55]  <u>See, e.g.</u>, <u>In re Revel AC, Inc.</u>, 802 F.3d 558, 568-71 (3d Cir. 2015) (the following factors are considered when determining whether to grant a stay pending appeal: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.").

[56]  <u>See</u> Del. Bankr. L. R. 9006-2 ("Unless otherwise provided in the Code or in the Fed. R. Bankr. P., if a motion to extend the time to take any action is filed before the expiration of the period prescribed by the Code, the Fed. R. Bankr. P., these Local Rules or Court order, the time shall automatically be extended until the Court acts on the motion, without the necessity for the entry of a bridge order."). <u>But see</u> <u>Maxus Liquidating Trust v. YPF S.A. (In re Maxus Energy Corp.)</u>, 633 B.R. 215, 221-22 (Bankr. D. Del. 2021) (stating that the rule "cannot and does not apply to a motion for a stay pending appeal from an order requiring production of documents by a date certain").

An appropriate Order is attached.

Dated: December 13, 2024                BY THE COURT:


Mary F. Walrath
United States Bankruptcy Judge